# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA,
# ATLANTA DIVISION

| | |
|---|---|
| CHARLES REINHARDT, <br><br> Plaintiff, <br><br> vs. <br><br> RETAIL PROPERTIES OF AMERICA, INC., GERALD M. GORSKI, BONNIE S. BIUMI, FRANK A. CATALANO, JR., STEVEN P. GRIMES, RICHARD P. IMPERIALE, PETER L. LYNCH, and THOMAS J. SARGEANT, <br><br> Defendants. | Civil Action No. <br><br> **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** <br><br> **JURY TRIAL DEMANDED** |

Plaintiff Charles Reinhardt ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1. Plaintiff brings this action against Retail Properties of America, Inc. ("RPAI" or the "Company") and its corporate directors for violating Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a) and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9. By the action, Plaintiff seeks to enjoin the vote on a

proposed transaction pursuant to which Kite Realty Group Trust ("Kite Realty") will acquire the Company through Kite Realty's subsidiary KRG Oak, LLC ("Merger Sub") (the "Proposed Transaction").[1]

2. On July 19, 2021, RPAI and Kite Realty jointly announced their Agreement and Plan of Merger dated July 18, 2021 (the "Merger Agreement") to sell RPAI to Kite Realty. Under the terms of the Merger Agreement, RPAI stockholders will receive 0.623 common shares of Kite Realty common stock for each share of RPAI common stock they own. Upon completion of the merger, the current Kite Realty shareholders are expected to own approximately 40% of the issued and outstanding Kite Realty common shares, and former RPAI stockholders are expected to own approximately 60% of the issued and outstanding Kite Realty common shares. The Proposed Transaction is valued at approximately $7.5 billion.

3. On September 14, 2021, RPAI filed a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. The Proxy Statement, which recommends that RPAI stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information necessary and essential to that decision.

---

[1] Non-party Kite Realty is a publicly held REIT which, through Kite Realty Group, L.P., owns interests in various operating subsidiaries and joint ventures engaged in the ownership, operation, acquisition, development, and redevelopment of neighborhood and community shopping centers and other real estate assets in select markets in the United States. Non-party Merger Sub is a Maryland limited liability company and a wholly owned subsidiary of Kite Realty.

The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as RPAI stockholders need such information in order to make a fully informed decision whether to vote in favor of the Proposed Transaction.

4. It is imperative that the material information omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to the Company's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional

notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391 because RPAI maintains executive offices in this District and has engaged in numerous activities that had an effect in this District.

## THE PARTIES

9. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of RPAI.

10. Defendant RPAI is a Maryland corporation, with its principal executive offices located at 2021 Spring Road, Suite 200, Oak Brook, Illinois 60523 and executive offices located at 2675 Paces Ferry Road, Suite 320, Atlanta, Georgia 30339. RPAI is a real estate investment trust ("REIT") that owns and operates high quality, strategically located open-air shopping centers, including properties with a mixed-use component. RPAI's common stock trades on the New York Stock Exchange under the ticker symbol "RPAI."

11. Defendant Gerald M. Gorski ("Gorski") has been Chairman of the Board since 2010 and a director of the Company since 2003.

12. Defendant Bonnie S. Biumi ("Biumi") has been a director of the Company since 2015.

13. Defendant Frank A. Catalano, Jr. ("Catalano") has been a director of the Company since 2003.

14. Defendant Steven P. Grimes ("Grimes") has been Chief Executive Officer ("CEO") of the Company since 2009, and a director of the Company since 2011. Defendant Grimes also served as: President of the Company from October 2009 to May 2018; Chief Financial Officer ("CFO") of the Company from November 2007 to December 2011; Chief Operating Officer ("COO") of the Company from November 2007 to October 2009; and Treasurer of the Company from October 2008 to December 2011.

15. Defendant Richard P. Imperiale ("Imperiale") has been a director of the Company since 2008.

16. Defendant Peter L. Lynch ("Lynch") has been a director of the Company since 2014.

17. Defendant Thomas J. Sargeant ("Sargeant") has been a director of the Company since 2013.

18. Defendants identified in paragraphs 10-16 are referred to herein as the "Board" or the "Individual Defendants."

SUBSTANTIVE ALLEGATIONS

**The Proposed Transaction**

19. On July 26, 2021, RPAI and Kite Realty jointly announced in relevant part:

> INDIANAPOLIS and CHICAGO, July 19, 2021 -- Kite Realty Group Trust (NYSE: KRG) and Retail Properties of America, Inc. (NYSE: RPAI) today announced that they have entered into a definitive merger

agreement under which RPAI would merge into a subsidiary of KRG, with KRG continuing as the surviving public company. The strategic transaction joins together two high-quality portfolios with complementary geographic footprints creating a top five shopping center REIT by enterprise value. The combined company is expected to have an equity market capitalization of approximately $4.6 billion and a total enterprise value of approximately $7.5 billion upon the closing of the transaction assuming a KRG share price of $20.83, which was the closing price on July 16, 2021. This immediately accretive transaction, paired with a strong balance sheet and significant value creation opportunities, is expected to provide a runway to increase long-term value for shareholders.

Under the terms of the merger agreement, each RPAI common share will be converted into 0.6230 newly issued KRG common shares in a 100% stock-for-stock transaction. Based on the closing share price for KRG on July 16, 2021, this represents a 13% premium to RPAI's closing stock price on July 16, 2021. On a pro forma basis, following the closing of the transaction, KRG shareholders are expected to own approximately 40% of the combined company's equity and RPAI shareholders are expected to own approximately 60%. KRG anticipates assuming all RPAI debt and has obtained a financing commitment to provide a $1.1 billion term loan bridge facility in the event certain debt consents cannot be obtained prior to the closing of the transaction. The parties expect the transaction to close during the fourth quarter of 2021 subject to customary closing conditions, including the approval of both KRG and RPAI shareholders. The transaction was unanimously approved by the Board of Trustees of KRG and the Board of Directors of RPAI.

The merger will create an operating portfolio of 185 open-air shopping centers comprised of approximately 32 million square feet of owned gross leasable area. These properties are primarily located in "Warmer and Cheaper" metro markets in the United States with 70% of centers by annualized base rent ("ABR") having a grocery component. The combined company is expected to benefit from increased scale and density in strategic markets, deeper tenant relationships given the broader mix of open-air retail types, an appropriately sized development pipeline and a strong balance sheet.

"This merger marks a momentous day for KRG and our shareholders,"

said John A. Kite, Chairman and CEO of Kite Realty Group. "The combination of our firms brings together two high-quality, complementary portfolios. The combined company will have durable cash flows, operational upside and external value creation opportunities. The financial benefits of the transaction include immediate earnings accretion, while maintaining a strong balance sheet. This merger further demonstrates our conviction in open-air retail centers as essential shopping destinations and last mile fulfillment centers. We are energized about the future of this combined company."

"After many years of curating both of our portfolios, combining them into one company will allow us to generate the best results for both sets of shareholders over the long term," said Steven P. Grimes, CEO of RPAI. "Our increased scale will benefit the business both operationally and financially, allowing us to take advantage of reduced cost of capital as well as pursue future value creation opportunities by partnering KRG's development expertise with our embedded development pipeline. We are excited to present this transaction to our shareholders, who will be the beneficiaries of the near-term and future benefits of the combined company."

Summary of Strategic Benefits

The merger of KRG and RPAI is expected to create a number of operational and financial benefits, including:

- Positive Financial Impacts and Immediate Accretion

    - Provides immediate accretion to earnings per share upon realizing cash expense synergies of $27 - $29 million.

    - Larger scale will reduce cost of capital, thereby driving higher net income to shareholders.

    - Significantly increases shareholder liquidity allowing larger investor base to hold more meaningful positions in the combined entity.

- Enhances Portfolio Quality and Diversification

    - Retail ABR per square foot of $19.29.

    - Broader mix of open-air retail types allowing for deeper

      and more diverse tenant relationships.

- 70% of ABR is located in centers with a grocery component.

- Diverse combined tenant base with no single tenant representing more than 2.4% of total ABR.

• Significant Presence in Strategic Markets

- Maintains sector-leading exposure to Warmer and Cheaper markets.

- Substantial portfolio concentration, with approximately 40% of ABR in growth states of Texas and Florida.

- Bolsters presence in Dallas, Atlanta, Houston and Austin.

- Meaningful presence in other strategic gateway markets such as Washington, D.C., New York, and Seattle.

• Generates Significant Value Creation Opportunities

- Presents near-term, organic growth opportunities through lease-up of vacancies caused by the pandemic.

- Active development and redevelopment projects expected to deliver additional Net Operating Income.

- KRG's extensive development expertise in a variety of property types provides additional potential value creation for both active and future development projects.

- Appropriately sized and measured development pipeline will offer potential additional value creation opportunities.

• Strengthens Balance Sheet

- Combined balance sheet poised to capture future growth opportunities.

- Net debt plus preferred to EBITDA ratio anticipated to be 6.0x inclusive of expected G&A synergies.

- No material debt maturities until 2023, with an appropriate

>   maturity ladder going forward.

- Creates a Top 5 Shopping Center REIT

    o Combined company will have an estimated $7.5 billion total enterprise value upon the closing of the transaction assuming a KRG share price of $20.83, which was the closing price on July 16, 2021.

    o Combination of operating best practices expected to drive Net Operating Income improvements.

    o Deepens tenant relationships and increased optionality to a broader mix of open-air retail formats.

**Leadership and Organization**

The combined company will continue to be operated at the high standards previously established at both KRG and RPAI. The number of trustees on KRG's board will be expanded to thirteen with four members of the existing Board of Directors of RPAI to be appointed to KRG's board. John Kite will continue to serve as Chairman of the Board of Trustees of the combined company. William Bindley will continue to serve as Lead Independent Trustee.

The KRG management team will lead the combined company, with John Kite as Chief Executive Officer, Thomas McGowan as President and Chief Operating Officer and Heath Fear as Chief Financial Officer. The approach to integration will draw from the best practices of both companies to ensure continuity for tenants, employees and other stakeholders.

Upon completion of the merger, the company's headquarters will remain in Indianapolis, Indiana. The company will retain the Kite Realty Group name and trademarks and will continue to trade under the NYSE symbol KRG.

**Dividend Policy**

KRG intends to maintain its current dividend policy post-closing. Given the current dividend levels and conversion ratio, RPAI shareholders will experience a dividend increase of approximately 50% from current levels (based on current annualized distribution amount).

The timing of the pre-closing dividends of KRG and RPAI will be coordinated such that, if one set of shareholders receives their dividend for a particular quarter prior to the closing of the merger, the other set of shareholders will also receive their dividend for such quarter prior to the closing of the merger.

**Advisors**

BofA Securities is acting as lead financial advisor to KRG, with KeyBanc Capital Markets also acting as financial advisor to KRG. Hogan Lovells US LLP is acting as legal advisor to KRG. Citigroup Global Markets Inc. is acting as exclusive financial advisor and Goodwin Procter LLP is acting as legal advisor to RPAI.

**The Proxy Statement Contains Material Misstatements or Omissions**

20. The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to RPAI's stockholders. The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction.

21. Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: concerning, among other things: (a) RPAI's and Kite Realty's financial projections; and (b) the financial valuation analyses underlying the fairness opinion provided by the Company's financial advisor, Citigroup Global Markets Inc. ("Citigroup"). Accordingly, RPAI stockholders are being asked to vote for the Proposed Transaction without all material information at their disposal.

***Material Omissions Concerning RPAI's and Kite Realty's Financial Projections***

22. The Proxy Statement is materially deficient because it fails to disclose material information relating to the Company's and Kite Realty's financial projections, including the line items underlying: (a) FFO per share; (b) EBITDA; (c) unlevered free cash flows; and (d) with respect to the Company only, Cash NOI.

23. Additionally, in connection with Citigroup's illustrative discounted cash flow analysis for the combined company, the Proxy Statement fails to disclose the unlevered free cash flows to be generated by the combined company for the period from April 1, 2021, through December 31, 2026.

24. The omission of this information renders the statements in the "Certain Unaudited Prospective Financial Information" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

25.

***Material Omissions Concerning Citigroup's Financial Analyses***

26. The Proxy Statement describes Citigroup's fairness opinion and the various valuation analyses performed in support of its opinion. However, the description of Citigroup's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, RPAI's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Citigroup's fairness opinion in determining whether to vote in favor of the Proposed Transaction. This

11

omitted information, if disclosed, would significantly alter the total mix of information available to RPAI's stockholders.

27. With respect to Citigroup's *Discounted Cash Flow Analysis* of RPAI, the Proxy Statement fails to disclose: (a) quantification of the one-year growth rate Citi applied to the net operating income of RPAI during the final year of the forecast period; (b) the assumptions underlying the utilization of terminal capitalization rates of 6.15% to 7.15%; (c) quantification of the inputs and assumptions used to derive the discount rate range of 7.42% to 8.40% for RPAI; and (d) quantification of RPAI's net debt and non-controlling interests.

28. With respect to Citigroup's *Discounted Cash Flow Analysis* of Kite Realty, the Proxy Statement fails to disclose: (a) quantification of the one-year growth rate Citi applied to the net operating income of Kite Realty during the final year of the forecast period; (b) the assumptions underlying the utilization of terminal capitalization rates of 6.15% to 7.15%; (c) quantification of the inputs and assumptions used to derive the discount rate range of 7.69% to 8.72% for Kite Realty; and (d) quantification of Kite Realty's net debt and non-controlling interests.

29. With respect to Citigroup's *Discounted Cash Flow Analysis* of the combined company, the Proxy Statement fails to disclose: (a) the unlevered free cash flows that the combined company was expected to generate during the period from April 1, 2021 through December 31, 2026; (b) the assumptions underlying the utilization of terminal capitalization rates of 6.15% to 7.15%; and (c) quantification

of the inputs and assumptions used to derive the discount rate range of 7.42% to 8.40% for the combined company.

30. With respect to Citigroup's *Selected Public Companies Analysis* for RPAI and Kite Realty, the Proxy Statement fails to disclose the financial multiples and metrics for each of the comparable companies analyzed.

31. When a banker's endorsement of the fairness of a transaction is touted to stockholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

32. The omission of this information renders the statements in the "Opinion of RPAI's Financial Advisor" and "Certain Unaudited Prospective Financial Information" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

33. The Individual Defendants were aware of their duty to disclose this information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other stockholders of RPAI will be unable to make a fully-informed decision on whether to vote in favor of the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

### Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder

34. Plaintiff repeats all previous allegations as if set forth in full.

35. During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

36. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement. The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about RPAI's and Kite Realty's financial projections and the financial analyses performed by the Company's financial advisor, Citigroup. The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

37. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

38. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

39. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

40. Plaintiff repeats all previous allegations as if set forth in full.

41. The Individual Defendants acted as controlling persons of RPAI within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of RPAI, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

42. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the

ability to prevent the issuance of the statements or cause the statements to be corrected.

43. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy Statement.

44. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

45. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

46. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate

result of defendants' conduct, RPAI' stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of RPAI, and against defendants, as follows:

- A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to RPAI stockholders;

- B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

- C. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

- D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

- E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: October 8 2021

**OF COUNSEL:**

**LONG LAW, LLC**
Brian D. Long
3828 Kennett Pike, Suite 208
Wilmington, DE 19808
Tel: (302) 729-9100
bdlong@longlawde.com

**WEISSLAW LLP**

/s/ _____
Michael A. Rogovin
Georgia Bar No. 780075
476 Hardendorf Ave. NE
Atlanta, GA 30307
Tel.: (404) 692-7910
Fax: (212) 682-3010
mrogovin@weisslawllp.com
             -and-
Richard A. Acocelli
305 Broadway, 7th Floor
New York, NY  10007
Telephone: 212/682-3025
Facsimile:  212/682-3010

*Attorneys for Plaintiff*